UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MICHAEL A. HERTZBERG, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 01-2494 (PLF) |
| ANN M. VENEMAN, UNITED STATES DEPARTMENT OF AGRICULTURE, | ) |
| Defendant. | ) |

MEMORANDUM OPINION

On July 28, 2003, this Court issued an Opinion entering summary judgment for defendant on all claims, except with respect to the application of Exemption 6 withholding to six videotapes and the issue of segregability with respect to six documents. See Hertzberg v. Veneman, 273 F. Supp 2d 67, 91 (D.D.C. 2003). Defendant was instructed to submit a supplemental affidavit on the issue of segregability with respect to Documents 16 and 18-22, or, in the alternative, submit the documents to the Court for in camera review. See id. at 92. Defendant was further ordered to submit to the Court the six videotapes which had been withheld in part or in full for in camera review. See id.

On August 28, 2003, defendant submitted a supplemental declaration further describing the six documents. See Defendant's Notice of Filing, Fourth Declaration of Rita M. Morgan ("Fourth Morgan Decl."). Defendant also submitted the original and redacted versions of Tapes 6, 7, 9, 12, and 13. See Notice of Filing at 2. Defendant explained in its Notice of Filing that, upon further review, defendant had determined that Tape 4 had been created by a local government firefighter who was on duty at the time the video was shot. See Defendant's

Notice of Filing, Fifth Declaration of Rita M. Morgan ("Fifth Morgan Decl.") at ¶ 7. Defendant therefore has released to plaintiff the unredacted version of Tape 4. Defendant also explained that the two videotapes which had previously been withheld in full, Tapes 9 and 12, could properly be released to plaintiff with the audio portion removed. Fifth Morgan Decl. at ¶ 5. Defendant therefore has submitted the original and redacted versions of the five tapes in question for in camera review.

In a reply to Defendant's notice of filing, plaintiff contends that defendant's declarations regarding the videotapes in question are inconsistent and that defendant has been recalcitrant in fully complying with plaintiff's FOIA requests. See Reply to Defendant's Notice of Filing of August 28, 2003 at 5. Plaintiff then requests that the Court order all documents currently withheld by defendant be reviewed by the Court in camera. See id. Defendant responds that its additional release of information over time should not cause the agency to be penalized simply because the disclosures were made after the filing of a FOIA lawsuit. See Response to Plaintiff's Reply to Defendant's Notice of Filing of August 28, 2003 at 3. Defendant argues that its further release of information demonstrated a "good-faith and continuing effort to conduct a thorough review of the responsive materials, and to release the greatest amount of non-exempt materials allowable under FOIA." See id. at 5. The Court agrees and declines to order a full in camera review of all withheld documents.

## I. SEGREGABILITY

Defendant describes the six withheld documents as follows: (1) Document 16 is a one-page, hand-drawn map; (2) Document 18 is a one page, annotated map and three pages of hand-written notes; (3) Document 19 is a one-page, annotated map; (4) Document 20 is a log

page and five pages of photographs; (5) Document 21 is two one-page, annotated maps; and (6) Document 22 is a one-page, annotated map. See Fourth Morgan Decl. at ¶¶ 4, 9.

The Court explicitly found in its Opinion that witness statements by federal employees and contractor employees collected in anticipation of litigation are properly withheld pursuant to Exemption 5. See Hertzberg v. Veneman, 273 F. Supp. 2d at 76-81. The maps in Documents 16, 18, 19, 21 and 22 are attachments to witness statements obtained by interviewers working under the direction of USDA attorneys. See Fourth Morgan Decl. at ¶ 5. The maps were provided by the witness at the same time as the accompanying statement. See id. The map in Document 16 is hand-drawn, and the maps in Documents 18, 19, 21 and 22 were printed maps that were annotated by the witnesses. See id. The three pages of hand-written notes in Document 18 were provided by a witness as a supplement to his original statement. See id. at ¶ 7. The photographs in Document 20 were provided by a witness as a supplement to the witness' statement. See id. at ¶ 9. All of these documents were thus a part of the witness statements which the Court already has ruled were properly withheld. See Hertzberg v. Veneman, 273 F. Supp. 2d at 76-81; Defendant's Motion for Summary Judgment, First Declaration of Rita Morgan ("Morgan Decl.") at ¶¶ 78-105. There Court therefore concludes that these documents also were properly withheld pursuant to Exemption 5.

The only document that was not an attachment to a witness statement prepared by or annotated by a witness was the log page in Document 20. The log page was produced by an interviewer working on the investigation at the direction of USDA attorneys and is the interviewer's notes regarding radio transmissions which seemed important to the interviewer. See Fourth Morgan Decl. at ¶ 9. This document, too, is clearly protected by the work-product privilege and therefore was properly withheld pursuant to Exemption 5. Because all the documents in question were properly withheld pursuant to Exemption 5, it is unnecessary to

conduct a further segregability analysis.  Summary judgment is granted to defendant with respect to the six withheld documents.

## II.  EXEMPTION 6

Defendant has provided the Court with the five videotapes which it continues to withhold in part.  As the Court discussed in its July 28 Opinion, "the privacy interest of the homeowners in their names, addresses and other identifying information – such as the location of their homes – is insignificant in this case."  See Hertzberg v. Veneman, 273 F. Supp 2d at 88.  The Court also held that the privacy interests in the individuals' visual images were likewise insignificant because the videotapes were provided voluntarily with no promise of confidentiality.  See id. at 89.  The only question remaining, then, was whether the redacted portions of the videotapes provided "potential illumination of agency action." Id. at 89.  Plaintiff argued that the tapes would show the wind and wildfire conditions at the time the backfire was lit and the paths of the fires, allowing the public to evaluate how the agency responded to the wildfire situation in and around the Bitterroot National Forest.  See id.  Defendant responded that the videotapes did not contain images of Forest Service officials or any government operations in progress.  See id. at 90.  The Court determined that it was not possible to conclude solely from the letters and declarations provided that the tapes "do not contain information about how the Forest Service responded to the crisis and performed its official functions" and therefore ordered that copies of the tapes be provided to the Court.  Id.  The Court now has reviewed both the redacted and unredacted versions of the tapes.

### A. Tapes 9 and 12

The government indicates that Tapes 9 and 12 have been released to plaintiff with the audio tracks removed. See Fifth Morgan Decl. at ¶ 5. The audio track of Tape 9 contains various voices discussing the locations depicted on the videotape as well as the wind conditions at the time of filming. One voice states a telephone number at the beginning of the tape. There is not a significant amount of dialogue. The audio track of Tape 12 consists of a detailed monologue describing the locations which the narrator is recording and explaining when and where loads of retardant were dumped. The narrator specifically names various landowners who were affected by the fire.

Unlike the information redacted from the witness statements and the evacuation forms, which the Court concluded "shed no light on how the government operates and is not at all related to opening agency action to the light of public scrutiny," Hertzberg v. Veneman, 273 F. Supp. 2d at 88, the videotapes in question consist of extensive footage of the forest fires themselves as well as efforts to extinguish the flames by dumping retardant from helicopters. The audio portions of the videotapes, to a greater and lesser extent, offer descriptions of the locations portrayed and the progress of the wildfires. As the Court has already concluded that the individuals on the tapes have no privacy interest in their voices, the Court cannot conclude that the audio portions of these videotapes will not provide further illumination to the already-released video portion of the tape. Tapes 9 and 12 therefore must be released in unredacted form.

### B. Tapes 6, 7 and 13

With respect to Tapes 6, 7 and 13, the Court is unclear as to what precisely the government redacted. The government's declaration indicated that the videotapes were "released with the sound removed." Fifth Morgan Decl. at ¶ 7. The "redacted" tapes provided to the Court

5

did not have the sound tracks removed and were, in fact, identical, in all except one instance, to the "original" tapes provided to the Court.[1]  The Court assumes that the representations made in the Fifth Morgan Declaration are accurate and that Tapes 6, 7, and 13 were released to plaintiff in their entireties with only the audio track removed.

The audio track of Tape 6 contains discussions of the helicopters that are dumping retardant on the fires and a few transmissions from a CB radio.  The voices on the tape periodically name locations that are affected by the fires and explain what the footage is showing.  Although the audio track contains significant quantities of nonspecific observations of the fires, the Court concludes that Tape 6 must be released in unredacted form.

The audio track of Tape 7 contains discussions of the helicopters that were used to fight the fires and mentions names and locations of affected areas.  The voices on the tape are often indistinct. Periodically, the tape shows individuals, but the individuals are incidental to the footage of the fires.  Again, although much of the audio track consists of nonspecific observations about the fires, because the voices add context by discussing the location of the footage, the Court concludes that Tape 7 must be released in unredacted form.

Tape 13 presents a more difficult question.  In all of the other tapes, the video and audio footage of individuals is incidental to the narrator's taping of the fires.  Tape 13, however, contains six distinct portions which are separate from the fire footage: a brief segment showing one of the narrator's children playing with her dogs; a brief segment showing the narrator's two children; footage of a child's birthday party; footage of the inside of the narrator's cabin; footage of two children playing a duet; and footage showing a lecture on how to become a firefighter

---

[1]  On Tape 13, the "original" tape continues with taped television programs after the home videos end.  The "redacted" tape ends with the end of the home videos.  There were no other differences between the two tapes.  There were no differences between the redacted and unredacted versions of Tapes 6 and 7.

("Non-Relevant Segments").  If the Non-Relevant Segments were redacted from Tape 13, no relevant information would be denied to plaintiff.

Defendant's declaration, however, indicates that this tape has already been released in its entirety, except for the audio track.  The portions of the audio track which are not associated with the Non-Relevant Segments are highly relevant in that they contain not only the same type of location and contextual information as the other four tapes, as well as discussions of "backburn" and "slurry bombing," but also because the videotape contains footage of a "townhall" type meeting which appears to be conducted by firefighters and at which the backfire operation is discussed.  All audio portions of the tape, with the exception of those associated with the Non-Relevant Segments, must be released to plaintiff.

If, as it appears, the entire video portion of this tape was already released to plaintiff, the Court cannot conclude that the additional release of the entire audio portion will have a significant impact on the individuals' privacy concerns.  Indeed, as the Court has already explained, the privacy interests of the individuals depicted in the tapes are insignificant.  If, however, the government is withholding video and audio portions of the Non-Relevant Segments, that would be proper because such footage offers no illumination of agency action.  If the government is withholding the audio portion of only the Non-Relevant Segments, that would likewise be proper.  The Court would allow such redaction so long as the remaining audio portions of the tape were released.

The Court therefore will provisionally order the release of Tape 13 in unredacted form, but will first give the government an opportunity to explain whether it has redacted video or audio from solely the Non-Relevant Segments.

   For the reasons discussed herein, the Court grants summary judgment to defendant and denies summary judgment for plaintiff with respect to the six remaining withheld documents and grants summary judgment to plaintiff and denies summary judgment to defendant with respect to Tapes 6, 7, 9, 12, and 13.  An Order consistent with this Memorandum Opinion shall be issued this same day.

   SO ORDERED.

                 _____
                 PAUL L. FRIEDMAN
                 United States District Judge

DATE: